BRYAN J. HARRISON, ESQ. (SBN 277312)
*Bryan@h-klaw.com*
EDI P. KRISTOPHER, ESQ. (SBN 284833)
*Edi@h-klaw.com*
**HARRISON | KRISTOPHER, LLP**
301 E. Colorado Blvd., Ste. 323
Pasadena, California 91101
Telephone: (866) 529-6155
Facsimile: (866) 565-6206

HOSSEIN KHATAMI, ESQ. (SBN 278350)
*Hoss@hosslaw.com*
**HOSS LAW, P.C.**
2140 Professional Dr., Ste. 150
Roseville, California 95661
Telephone: (916) 788-4445
Facsimile: (916) 788-4447

Attorneys for Plaintiffs,
THE ESTATE OF JOSEPH REAGAN, *by and through Chelsea August, Successor in Interest to Decedent Joseph Reagan;* CHELSEA AUGUST, *as an Individual.*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| THE ESTATE OF JOSEPH REAGAN, *by and through Chelsea August, Successor in Interest to Decedent Joseph Reagan;* CHELSEA AUGUST *as an individual,*<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR), an agency of the State of California; ROBERT ST. ANDRE, Warden of High Desert State Prison; and DOES 1 to 20, individually, jointly and severally,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS, AND DEMAND FOR TRIAL BY JURY** |

**INTRODUCTION**

1.    JOSEPH REAGAN (REAGAN) was killed by incarcerated person, BRYAN COOK (COOK), on June 10, 2025, while in the custody of the CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION as a incarcerated person at the High Desert State Prison (HDSP), under the supervision of Warden ROBERT ST. ANDRE and the CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR).

**JURISDICTION & VENUE**

2.    This Court has jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. §1367.

3.    Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391 (b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

4.    Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120 (d) because the claims asserted herein arise from the acts and/or omissions which occurred in the County of Lassen, California.

**ADMINISTRATIVE REMEDIES**

5.    Plaintiffs, THE ESTATE OF JOSEPH REAGAN; CHELSEA AUGUST, timely presented their government claims on September 5, 2025, pursuant to the State of California, Department of General Services, Office of Risk & Insurance Management, Government Claims Program (Gov. Code § 910 et seq.).

**COMPLAINT FOR DAMAGES**

6.    The State failed to provide a written response within the time prescribed by Government Code § 912.4, accordingly, the claims are deemed rejected pursuant to Government Code § 912.4(c).

## PARTIES

7.    Plaintiff THE ESTATE OF JOSEPH REAGAN appears by and through the real-party-in-interest, Plaintiff CHELSEA AUGUST, the biological daughter of JOSEPH REAGAN, who brings this action pursuant to California Code of Civil Procedure § 377.30. A declaration of heirship is attached hereto as Exhibit 1 and is incorporated by reference.

8.    Plaintiff CHELSEA AUGUST brings this action as the successor-in-interest on behalf of the decedent JOSEPH REAGAN.

9.    Plaintiff is the proper successor in interest to JOSEPH REAGAN, pursuant to California Code of Civil Procedure § 377.11. Plaintiff brings these claims individually and as Successor in Interest for JOSEPH REAGAN, Deceased, and the claims are brought pursuant to California Code of Civil Procedure sections 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. The survival and wrongful death claims all survive the death of JOSEPH REAGAN and all arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure § 377.62. The claims set forth below are also brought by Plaintiff, individually and on behalf of Decedent JOSEPH REAGAN, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and federal and state civil rights law. The declaration regarding Plaintiff CHELSEA AUGUST's status as JOSEPH REAGAN's successor-in-interest pursuant to California Code of Civil Procedure § 377.32 is attached hereto as Exhibit 1 and is incorporated herein by reference.

10.    Plaintiff CHELSEA AUGUST is a resident of the County of Merced, California and is a citizen of the United States and is a competent adult.

11.    Defendant BRYAN COOK, at all times herein mentioned, was a resident of Lassen County, California.

**COMPLAINT FOR DAMAGES**                                                                 3

12.    Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION is located in the State of California.

13.    Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION is a "public entity," pursuant to California Government Code § 811.2.

14.    High Desert State Prison (HDSP) is a state prison in Susanville, California. HDSP is a maximum-supermax security institution, opened in August 1995 and houses over 1800 high security custody incarcerated people. It is operated under the supervision of Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION.

15.    Defendant ROBERT ST. ANDRE was, at all times material herein, the warden for the HDSP, acting within the scope of employment and under color of state law. Defendant ROBERT ST. ANDRE is sued in an individual capacity.

16.    Defendants DOES 1 through 20 are and/or were agents, contractors, or employees of Defendants HDSP, and/or the CDCR, acting within the scope of agency or employment and under color of state law. Defendants DOES 1 through 20 are sued by fictitious names and their true and correct names and identities will be substituted when ascertained.

## GENERAL ALLEGATIONS

17.    At all times relevant herein, all wrongful actions described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

18.    JOSEPH REAGAN was a 44-year-old man, prior to his death on June 10, 2025.

19.    At all times relevant herein, JOSEPH REAGAN faced a substantial risk of serious harm while incarcerated at HDSP. This risk arose from multiple, overlapping factors known to Defendants, including: (a) REAGAN's wheelchair-bound condition, which rendered him physically incapable of defending himself or fleeing from attack; (b) his prior

1  physical altercation with HDSP correctional officers and his pending administrative

2  grievance and/or government claim against the CDCR, which created a known risk of

3  retaliation and marked him as a potential target; (c) the documented presence and circulation

4  of inmate-manufactured weapons within HDSP housing units; (d) the housing of known

5  violent offenders, including BRYAN COOK, in the same unit as vulnerable inmates like

6  REAGAN; and (e) the pattern of inmate-on-inmate homicides at HDSP in the months

7  preceding REAGAN's death, each involving inmate-manufactured weapons and failures of

8  classification, supervision, and contraband control. Defendants knew of each of these risk

9  factors and either actually appreciated, or were deliberately indifferent to, the substantial risk

10  of serious harm they posed to JOSEPH REAGAN.

<b>The Attack</b>

12      20.     The allegations contained in paragraphs 20 through 26 are asserted in part on

13  information and belief, except where otherwise indicated.

14      21.     On or about June 10, 2025, JOSEPH REAGAN and BRYAN COOK were

15  both incarcerated within the same housing unit at HDSP. Although they were not cellmates,

16  they were regularly placed in close proximity to one another and shared access to the same

17  dayroom and common areas under the supervision of HDSP correctional staff. At all

18  relevant times, COOK was serving a life sentence with the possibility of parole for second-

19  degree murder and was documented by CDCR staff as a violent and high-risk inmate.

20      22.     In the weeks prior to the June 10, 2025 incident, JOSEPH REAGAN was

21  involved in a physical altercation with HDSP correctional officers during which he sustained

22  serious injuries that confined him to a wheelchair. As a result of the injuries he sustained

23  during that altercation, REAGAN filed an administrative grievance and/or a government

24  claim against the CDCR pursuant to Gov't Code § 910 et seq., seeking compensation for his

25  injuries. Upon information and belief, JOSEPH REAGAN's claim and the underlying

26  altercation were known to correctional staff within his housing unit, including Defendants

27

28

1  DOES 1 through 20, and engendered hostility toward JOSEPH REAGAN among HDSP

2  personnel.

3      23.     As a direct result of his injuries and consequent immobility, JOSEPH

4  REAGAN was substantially more vulnerable to assault and unable to defend himself or

5  evade harm. REAGAN's wheelchair-bound condition was open and obvious to all

6  correctional staff who observed him in the housing unit. CDCR officials and staff knew, or

7  reasonably should have known, of his debilitated physical condition, his pending grievance

8  or claim against the CDCR arising from staff conduct, and the heightened risk that his

9  physical limitations and adversarial relationship with the institution made him a target for

10  harm. Despite this knowledge, Defendants failed to provide appropriate protective custody

11  or housing accommodations to mitigate his vulnerability.

12      24.     On June 10, 2025, while JOSEPH REAGAN remained wheelchair-bound,

13  inmate BRYAN COOK launched a violent and sustained attack against him in the dayroom

14  area using an inmate-manufactured weapon. BRYAN COOK stabbed JOSEPH REAGAN

15  multiple times, inflicting fatal injuries. The assault was prolonged and violent, lasting a

16  sufficient duration to attract the attention of multiple inmates within the unit, who audibly

17  called for assistance from correctional officers.

18      25.     During the attack, Correctional Officers DOES 1 through 20 failed to

19  intervene or take reasonable measures to protect JOSEPH REAGAN. Upon information

20  and belief, their failure to act was willful and deliberate, motivated by retaliatory animus

21  arising from REAGAN's prior physical altercation with HDSP staff and his subsequent

22  administrative claim and/or government claim against the CDCR. The following acts and

23  omissions, considered in light of REAGAN's known vulnerability, his pending claim against

24  the institution, and standard correctional protocols, support the reasonable inference that

25  Defendants' inaction was intentional rather than negligent:

26      a.     Intentionally closing control booth windows prior to or during the attack on

27  JOSEPH REAGAN. The control booth is the nerve center of the housing unit, designed to

28

1    provide correctional officers with visual and auditory access to all areas where inmates are

2    present. By physically closing the windows, Defendants DOES 1 through 20 deliberately

3    severed their ability to hear JOSEPH REAGAN's cries for help, the shouts of other inmates

4    calling for assistance, and the sounds of the violent assault. This was not a passive failure to

5    observe; it was an affirmative act designed to insulate Defendants from any obligation to

6    respond. Defendants used their exclusive control over the housing unit's security

7    infrastructures to ensure that REAGAN's pleas for help would go unanswered.

8         b.    Affirmatively deciding not to conduct required security checks and housing

9    unit walk-throughs mandated by the Department Operations Manual and applicable CDCR

10   policies. These checks are not discretionary; they are mandatory safety measures designed to

11   detect and prevent precisely the type of violence that killed JOSEPH REAGAN. Defendants

12   DOES 1 through 20 made a conscious decision to disregard these mandatory duties, thereby

13   ensuring that no officer would physically enter the dayroom area, observe the attack, or

14   intervene on REAGAN's behalf. Their deliberate abandonment of required protocols

15   functioned as a tool of coercion, using institutional authority to strip REAGAN of the

16   protective oversight to which he was entitled.

17        c.    Refusing to deploy authorized force to halt the attack on JOSEPH REAGAN,

18   despite possessing both the means and the legal duty to do so. Correctional officers at

19   HDSP are trained and equipped to respond to inmate-on-inmate violence, including through

20   the use of physical intervention, chemical agents, and lethal force if necessary to prevent

21   death or serious bodily injury. Defendants DOES 1 through 20 possessed these tools and

22   the training to use them. When confronted with a prolonged, deadly assault on a wheelchair-

23   bound inmate, they affirmatively chose to withhold intervention. This was not hesitation or

24   delayed reaction; it was a deliberate refusal to exercise the coercive power of the state for its

25   intended protective purpose, while simultaneously ensuring that REGAN – locked in a

26   housing unit under Defendant's exclusive control – had no alternative means of protection

27   or escape.

28

d.    Deliberately refraining from activating personal body alarms or institutional emergency alarm systems, despite awareness that JOSEPH REGAN was being attacked. Every correctional officer at HDSP is equipped with a personal body alarm capable of instantly summoning emergency response from throughout the institution. Institutional alarm systems exist for the same purpose. These systems require only the push of a button to active. Defendants DOES 1 through 20 made the affirmative decision not to push that button – not because they were unaware of the attack, but because they chose to let it continue. By deliberately withholding access to emergency response systems that only they could activate, Defendants wielded their institutional authority as an instrument of coercion, ensuring that REAGAN would receive no aid form the broader prison staff.

e.    Intentionally disregarding dayroom surveillance cameras that displayed the attack on JOSEPH REAGAN in real time. The dayroom was equipped with closed-circuit television providing a live video feed to the control booth and facility security rooms. Defendants DOES 1 through 20 were assigned to monitor these feeds as part of their duties. The prolonged and violent nature of the assault on REAGAN – a wheelchair-bound man being repeatedly stabbed – would have been unmistakably visible on the surveillance monitors. Defendants either deliberately averted their eyes from the monitors or observed the attack and consciously chose not to respond.  In either case, their conduct was not mere inattention; it was the purposeful decision to ignore visual evidence of a murder in progress, using their roles as the exclusive monitors of institutional surveillance to ensure that no response would be initiated.

f.    Making the affirmative classification and housing decision to place JOSEPH REAGAN – a wheelchair-bound inmate who had recently filed a grievance and/or government claim against CDCR arising from a physical altercation with correctional staff – in the same housing unit and dayroom as BRYAN COOK, a documented violent offender serving a life sentence for second-degree murder. CDCR classification and housing-separation policies exist precisely to prevent such dangerous pairings. Defendants DOES 1

1  through 20, and/or supervisory personnel acting at the direction of or with the acquiescence

2  of Defendant ST. ANDRE, deliberately disregarded these polices when assigning

3  REAGAN's housing. This was not an administrative oversight; it was a purposeful decision

4  to expose a vulnerable, physically impaired inmate to foreseeable violence from a known

5  dangerous offender, in deliberate contravention of policies designed to protect inmates like

6  REAGAN.

7      g.      Receiving and consciously disregarding prior warnings, administrative

8  grievances, and communications from JOSEPH REAGAN and other inmates indicating that

9  REAGAN feared for his safety. Upon information and belief, REAGAN or other inmates

10  communicated to correctional staff that REAGAN felt unsafe following his altercation with

11  HDSP officers and the filing of his grievance and/or government claim, and that he faced

12  potential threats from other inmates. Defendants DOES 1 through 20 received these

13  communications and made the deliberate decision to take no protective action – no housing

14  reassignment, no protective custody evaluation, no enhanced monitoring. By receiving

15  REGAN's please for protection and affirmatively choosing to deny them, Defendants used

16  their gatekeeping authority over inmates safety measures as an instrument of coercion and

17  intimidation, communicating to REAGAN that the institution would not protect him.

18      h.      Deliberately delaying the dispatch of medical and custody personnel after

19  becoming aware the JOSEPH REAGAN had been attacked and was suffering from life-

20  threatening injuries. Once Defendants became aware of the attack – whether through

21  auditory cues, surveillance monitoring, or reports from other inmates – they possessed the

22  exclusive ability to summon medical assistance. REAGAN, wheelchair-bound and bleeding

23  from multiple stab wounds, could not summon help himself. Other inmates, locked in their

24  cells or the dayroom, could not summon help. Only Defendants could activate the

25  institutional response. They chose not to do so promptly. This deliberate delay – measured

26  in minutes during which REGAN bled and suffered – was an affirmative exercise of

27

28

COMPLAINT FOR DAMAGES                                                                    9

coercive control over REAGAN's access to medical care, using Defendant's exclusive authority over emergency response to prolong his suffering and ensure his death.

26.    The totality of circumstances – including REAGAN's pending administrative grievance and/or government claim against the CDCR, his prior physical altercation with correctional officers, his open and obvious wheelchair-bound condition rendering him entirely dependent on staff for protection, the failure of multiple officers to respond to audible calls for help, and the deviation from mandatory security protocols – gives rise to a reasonable inference that Defendants DOES 1 through 20 acted with deliberate indifference to REAGAN's safety, or, alternatively, with retaliatory intent arising from his adversarial relationship with the institution.

27.    Following the incident, medical staff administered life-saving measures to JOSEPH REAGAN, who had sustained multiple stab wounds consistent with the use of an inmate-manufactured weapon. He was transported to the institution's medial triage and treatment area for emergency care. Despite these interventions, JOSEPH REAGAN was pronounced deceased at approximately 7:17 p.m. by on-scene medical personnel. An inmate-manufactured weapon was recovered from the scene.

<strong>In-Custody Death</strong>

28.    Defendants CDCR and ROBERT ST. ANDRE are responsible for taking charge of keeping county correctional facilities and the inmates in it, and are answerable for the inmate's safekeeping, including pursuant to California law and the CDCR Department Operations Manual.

29.    Defendants CDCR and ROBERT ST. ANDRE are responsible for supervising all aspects of the correctional facilities under their care and for staffing, training, supervising, and developing policies and customs at the correctional facilities related to inmates' safekeeping, including, for example, ensuring that contraband is not permitted to enter correctional facilities; that inmates are properly classified and housed based on an adequate risk/threat assessment; and that inmates are adequately and timely monitored.

30. On or about January 15, JOSEPH REAGAN 2009, was booked as a incarcerated person into the High Desert State Prison, located at 475-750 Rice Canyon Rd., Susanville, California 96127.

31. Defendants DOES 1 through 20, HDSP personnel, were responsible for classifying and assigning housing for JOSEPH REAGAN.

32. Following JOSEPH REAGAN's injuries and resulting wheelchair-bound condition (which arose from a prior physical altercation with HDSP correctional officers), Defendants DOES 1 through 20 nonetheless continued to classify, assign, and house him with the general population, exposing him to unrestricted interaction with other inmates in dayrooms and communal spaces. Such conduct was undertaken in reckless and blatant disregard for REAGAN's safety, given his physical limitations and known vulnerability to assault.

33. Defendants DOES 1 through 20 acted with deliberate indifference to JOSEPH REAGAN's safety and security. They made intentional decisions concerning his housing and confinement conditions that created a substantial risk of serious harm, and they failed to take reasonable and available measures to mitigate those risks. Their omissions included, but were not limited to:

a. Failing to investigate known or potential threats to REAGAN's safety based on his condition and prior conflicts with staff and inmates;

b. Failing to review and cross-reference the classification and disciplinary files of REAGAN and other inmates, including BRYAN COOK, before housing them in the same unit or permitting shared dayroom access;

c. Failing to consult available institutional sources such as custody records, threat assessments, and inmate alerts regarding compatibility and safety concerns; and

d. Failing to reclassify or assign REAGAN to protective custody or other secure housing despite clear indications of heightened risk.

**COMPLAINT FOR DAMAGES**                                                    11

A reasonable officer in these circumstances would have recognized the serious and obvious danger to REAGAN and taken appropriate steps to protect him from harm.

34.    In classifying and assigning housing for JOSEPH REAGAN, Defendants DOES 1 through 20 failed to adhere to applicable CDCR policies, training standards, and procedures, including those set forth in the Department Operations Manual governing inmate classification, housing, and safety assessments. Their actions and omissions were unreasonable, reckless, and a substantial factor in causing REAGAN's injuries and death.

35.    On or about June 10, 2025, JOSEPH REAGAN was housed in the general population at HDSP, where he was routinely exposed to unrestricted interaction with other inmates during dayroom and other communal activities. This included regular contact with inmate BRYAN COOK, who was also assigned to the same housing unit.

36.    At all relevant times, HDSP, under the direction and supervision of the CDCR and Warden ROBERT ST. ANDRE, suffered from chronic and pervasive security lapses. These included the routine circulation of contraband, such as inmate-manufactured weapons, narcotics, and other prohibited materials, which were readily accessible to incarcerated persons. These dangerous conditions were long-standing, well-documented, and known to CDCR leadership and custody staff, who failed to take effective corrective action.

37.    As a direct result of these systemic security failures, inmate BRYAN COOK had ready and foreseeable access to a deadly inmate-manufactured weapon within the dayroom and common areas he shared with JOSEPH REAGAN. The June 10, 2025 attack was carried out using one such weapon, a contraband instrument, that would not have been available but for Defendants' failure to implement and enforce adequate search, inspection, and contraband-control measures.

38.    Defendants CDCR, Warden ROBERT ST. ANDRE, and DOES 1 through 20 owed JOSEPH W. REAGAN a non-delegable duty of care to maintain a reasonably safe and secure correctional environment free from foreseeable inmate violence and from the introduction and circulation of weapons and other contraband. This duty included the

**COMPLAINT FOR DAMAGES**

1    obligation to develop, implement, and enforce institutional policies and practices requiring

2    regular searches, random inspections, staff training, and continuous monitoring of inmate

3    movement and common areas.

4        39.    Defendants CDCR, Warden ST. ANDRE, and DOES 1 through 20, through

5    their acts and omissions, breached their duty of care by failing to detect, remove, and

6    prevent the presence of contraband weapons within HDSP. Their failure to conduct

7    adequate searches, to monitor housing units, and to enforce mandatory security

8    protocols directly enabled inmate COOK to possess and use a deadly weapon in the

9    dayroom, resulting in the fatal attack on JOSEPH REAGAN.

10       40.    At the time of the attack, JOSEPH REAGAN remained wheelchair-bound

11   and physically incapacitated as a result of injuries sustained in a prior altercation with HDSP

12   correctional officers. His impaired mobility rendered him unable to defend himself, flee

13   from danger, or seek safety, a condition that was known or should have been known to all

14   custody staff and supervisors. Despite this knowledge, Defendants failed to take any

15   precautionary measures to protect him from foreseeable harm.

16       41.    Defendants DOES 1 through 20 acted with deliberate indifference to

17   JOSEPH REAGAN's safety and security. They made intentional decisions regarding the

18   conditions of his confinement that created an obvious and substantial risk of serious harm,

19   including but not limited to:

20       a.    Failing to search inmates, including BRYAN COOK, and their cells for

21   contraband prior to dayroom access;

22       b.    Failing to search all persons, including staff, contractors, and visitors, entering

23   or exiting the housing unit for contraband;

24       c.    Failing to conduct required inspections and monitoring of the dayroom and

25   other common areas known to be used for concealing or circulating weapons; and

26       d.    Failing to consider or act upon known risks arising from COOK's

27

28

**COMPLAINT FOR DAMAGES**                                                      13

1  documented violent history and REAGAN's wheelchair-bound condition, recent injury, and

2  prior conflict with correctional staff.

3        A reasonable correctional official in these circumstances would have recognized

4  the grave risk to REAGAN's safety and taken immediate steps to protect him from

5  foreseeable harm.

6        42.    Defendants DOES 1 through 20 further exhibited deliberate indifference and

7  retaliatory motive by intentionally closing the windows and doors of the control booth,

8  thereby preventing themselves from hearing JOSEPH REAGAN's screams for help and the

9  pleas of other inmates who witnessed the attack. They also failed to conduct mandatory

10  security rounds as required by the CDCR Department Operations Manual and institutional

11  post orders. These omissions reflected a conscious and willful disregard for established

12  CDCR safety protocols.

13        43.    Defendants DOES 1 through 20 failed to properly locate, confiscate, and

14  report contraband weapons in violation of CDCR's Department Operations Manual,

15  their post orders, and accepted correctional-safety standards. These failures were a direct and

16  proximate cause of JOSEPH REAGAN's death.

17        44.    On information and belief, the dayroom where the attack occurred was

18  monitored by closed-circuit television (CCTV)providing a live video feed to the facility's

19  control and security rooms. Defendants DOES 1 through 20 were responsible for

20  supervising inmates in that area, including by monitoring the CCTV feed and

21  conducting direct-view safety checks of the dayroom at regular intervals.

22        45.    Defendants DOES 1 through 20 failed to properly supervise the dayroom and

23  its occupants. They failed to timely observe, detect, and intervene while inmate BRYAN

24  COOK carried out the prolonged and violent stabbing of JOSEPH REAGAN. The attack

25  persisted long enough to attract the attention of other inmates, who shouted for help that

26  went unanswered.

27

28

**COMPLAINT FOR DAMAGES**      14

46.    JOSEPH REAGAN sustained multiple stab wounds and experienced massive blood loss, leading to his death. Due to his wheelchair-bound condition, he was unable to defend himself or retreat, leaving him entirely dependent upon correctional staff for his safety and survival.

47.    Defendants DOES 1 through 20 were not performing their required cell and unit inspections in accordance with CDCR security protocols and failed to promptly discover REAGAN's body following the assault. By the time they responded, REAGAN had already suffered catastrophic blood loss and could not be revived.

48.    The failure of Defendants DOES 1 through 20 to monitor and respond to events in the dayroom constituted deliberate indifference to JOSEPH REAGAN's safety. They made intentional decisions concerning the conditions of his confinement—specifically, the lack of active surveillance, timely response, and protective oversight—that placed him at substantial risk of serious harm. Reasonable and readily available measures, such as active CCTV monitoring, timely intervention, and adherence to required safety checks, were not taken.

49.    A reasonable correctional official in these circumstances would have recognized the high degree of risk, observed the need for immediate action or intervention, and responded appropriately to prevent or stop the attack on JOSEPH REAGAN. The failure of Defendants to act demonstrates a willful and conscious disregard for his life and safety.

50.    Through their collective acts and omissions, Defendants CDCR, Warden ST. ANDRE, and DOES 1 through 20 failed to follow applicable policies, training, standards, and procedures, including those set forth in the CDCR Department Operations Manual. Their systemic and individual failures created the conditions that allowed contraband weapons to proliferate, permitted inmate violence to occur unchecked, and directly caused the preventable and brutal death of JOSEPH REAGAN.

51.     Around 6:41 p.m., it was reported that BRYAN COOK attacked JOSEPH REAGAN. He was transported to the prison's triage and treatment area for a higher level of care. At 7:17 p.m. REAGAN was pronounced deceased by medical staff.

52.     On June 11, 2025, it was reported that JOSEPH REAGAN was killed after having been attacked with an inmate-manufactured weapon.

53.     Sometime after June 10, 2025, it was reported that BRYAN COOK has been charged with felony murder related to the death of JOSEPH REAGAN.

## POLICY / CUSTOM ALLEGATIONS

54.     At all times herein mentioned, Defendant ROBERT ST. ANDRE, in his capacity as Warden of HDSP, was a final policymaking authority for HDSP, including as it relates to the maintenance and operation of prison and detention facilities; training, supervision, and discipline of staff acting under his command; the classification, housing, and protection of inmates; the detection and eradication of contraband; and the safety and security of inmates in his custody. As Warden, Defendant ST. ANDRE received regular reports regarding critical incidents at HDSP, including inmate deaths, assaults, contraband discoveries, and staff misconduct, and possessed the authority and responsibility to implement corrective measures in response to such incidents.

55.     Defendant ST. ANDRE has been employed by Defendant CDCR since 2018, during which time he held supervisory and policymaking capacities at various institutions. In June 2023, he was appointed Warden of HDSP and was serving in that capacity on June 10, 2025. As Warden, Defendant ST. ANDRE was responsible for reviewing all incident reports involving serious bodily injury or death, responding to Office of the Inspector General inquiries, and implementing institutional corrective action plans following critical incidents. Upon information and belief, Defendant ST. ANDRE was personally briefed on each of the inmate homicides described in paragraphs 54 and was aware of the systemic failures in classification, housing, contraband control, and supervision that contributed to those deaths.

56.    Classification / Housing: Defendants CDCR and ROBERT ST. ANDRE maintained inadequate policies and customs relating to the classification and housing assignment of inmates including through inadequate consideration of information and risk factors. Defendant ST. ANDRE knew, or was deliberately indifferent to the fact, that these deficient policies and customs had repeatedly resulted in preventable inmate deaths at HDSP. In the months leading up to the death of JOSEPH REAGAN, the following homicides occurred at HDSP under Defendant ST. ANDRE's supervision as Warden, each involving circumstances materially similar to those that led to REAGAN's death:

a.    On May 3, 2024, 49-year-old Scott Cook was housed in HDSP and was attacked by John Patch and Zachary Harris using inmate-manufactured weapons. Cook was taken to the triage and treatment area where he was pronounced deceased.

https://www.cdcr.ca.gov/news/2024/05/06/high-desert-state-prison-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide-5/

b.    On August 21, 2024, 29-year-old Anthony Alvarez was housed in HDSP and was attacked by Luis Alvarez and Vincent Martinez using inmate-manufactured weapons. Alvarez was taken to the triage and treatment area where he was pronounced deceased.

https://www.cdcr.ca.gov/news/2024/08/22/high-desert-state-prison-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide-6/

c.    On November 26, 2024, 44-year-old Juan Luinares was housed in HDSP and was attacked by Zachary Barron using an inmate-manufactured weapon. Luinares was taken to the triage and treatment area where he was pronounced deceased.

https://www.cdcr.ca.gov/news/2024/11/27/hdsp-investigating-death-of-incarcerated-person-as-homicide-2/

d.    On April 26, 2025, a 54-year-old William Couste was housed in HDSP and was attacked by Rodger Brown using an improvised weapon. Couste was taken to the triage and treatment area where he was pronounced deceased.

https://www.cdcr.ca.gov/news/2025/04/26/high-desert-state-prison-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide-7/

57.     Each of the foregoing deaths occurred while Defendant ST. ANDRE served as Warden of HDSP. Each involved an attack by one or more incarcerated persons using inmate-manufactured weapons. Each resulted in the victim being transported to the triage and treatment area where he was pronounced deceased. Upon information and belief, following each incident, Defendant ST. ANDRE received detailed briefings regarding the circumstances of the death, reviewed or was provided with incident reports and investigative findings, and was required to submit corrective action plans to CDCR headquarters. Despite this pattern of materially similar homicides occurring under his command, Defendant ST. ANDRE failed to implement effective measures to prevent the continued circulation of inmate-manufactured weapons, failed to ensure that vulnerable inmates were properly classified and housed separately from known violent offenders, and failed to enforce mandatory supervision and monitoring protocols. His failure to take corrective action after repeated notice of the dangerous conditions at HDSP constituted deliberate indifference to a known and obvious risk of serios harm to inmates, including JOSEPH REAGAN.

58.     Contraband: Defendants CDCR and ROBERT ST. ANDRE were aware of and permitted contraband entering and remaining within correctional facilities including by way of inmates, employees, and/or contractors. Defendant ST. ANDRE knew that inmate-manufactured weapons were regularly present within HDSP housing units and that such weapons had been used in multiple fatal assaults under his tenure as Warden. Despite this knowledge, Defendant ST. ANDRE failed to implement or enforce policies and customs requiring that inmates, employees, and contractors be thoroughly searched prior to entering correctional facilities, and failed to ensure that housing units and common areas were regularly inspected for contraband. As a result, contraband, including deadly weapons, frequently entered and circulated within HDSP without detection or confiscation. For example:

a.      In March 2025, after a sweep of 11 high security prisons within the CDCR, including HDSP, 105 inmate-manufactured weapons, 123 cell phones, 62 needles and 189 miscellaneous items (including controlled substances, drug paraphernalia, escape paraphernalia, and other miscellaneous contraband) were discovered.

https://thetoughestbeat.com/sweeps-find-weapons-drugs-dangerous-contraband-in-11-cdcr-prisons/?utm_source=chatgpt.com

b.      On June 12, 2025, HDSP was placed on a "modified program" due to increase in overdoses and contraband findings.

https://www.lassennews.com/hdsp-and-other-cdcr-facilities-placed-on-modified-program?utm_source=chatgpt.com

59.      The March 2025 contraband sweep described above occurred approximately three months before JOSEPH REAGAN's death. The discovery of 105 inmate-manufactured weapons across 11 high-security prisons, including HDSP, demonstrated the pervasive and systemic nature of the contraband problem. Upon information and belief, Defendant ST. ANDRE was informed of the results of this sweep as they pertained to HDSP and was aware that dangerous weapons remained readily accessible to incarcerated persons within his institution. Despite this knowledge, Defendant ST. ANDRE failed to implement enhanced search protocols, additional cell inspections, or other measures sufficient to eliminate the circulation of inmate-manufactured weapons within HDSP. Approximately three months later, inmate BRYAN COOK obtained and used an inmate-manufactured weapon to kill JOSEPH REAGAN.

60.      Standards: Defendants CDCR, and ROBERT ST. ANDRE's practices and customs are inconsistent with state law, applicable industry standards, and their own policies and procedures including:

a.      California Code of Regulations title 15 § 1027 (Number of Personnel), § 1027.5 (Safety Checks), § 1050 (Classification Plan), § 1053 (Administrative Separation).

      b.    California Commission on Peace Officer Standards and Training (POST) Learning Doman 31 (Custody), Learning Doman 62 (Case Management and Sources of Information).

      Corrections Policy 209 (Incarcerated Person Records),

      Corrections Policy 224 (Staffing Plan),

      Corrections Policy 500 (Population Management),

      Corrections Policy 504 (Safety Checks),

      Corrections Policy 508 (Inmate Classification),

      Corrections Policy 602 (Supervision of Incarcerated Persons),

      Corrections Policy 1100 (Space and Environmental Requirements),

      Corrections Policy 1102 (Control Center),

      Corrections Policy 1103 (Crowding).

61.    Defendants CDCR and ROBERT ST. ANDRE did not meaningfully discipline, re-train, correct, or otherwise penalize correctional personnel involved in critical incidents where preventable injuries or deaths were sustained by inmates, including those incidents described above. Upon information and belief, no correctional officer at HDSP was terminated, demoted, or formally disciplined as a result of the four inmate homicides that occurred at HDSP between May 2024 and April 2025. Defendants CDCR and ROBERT ST. ANDRE's routine failure to hold correctional personnel accountable communicated to subordinate staff that failures in supervision, monitoring, and contraband control would be tolerated, thereby creating, facilitating, and encouraging and environment of deliberate indifference to inmate safety.

62.    Defendants CDCR and ROBERT ST. ANDRE were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of JOSEPH REAGAN.

63.     Defendants CDCR and ROBERT ST. ANDRE's inadequate policies, customs, training, supervision, and control of personnel, correctional facilities, and inmates under their care was a moving force behind and contributed to the injuries and death of JOSEPH REAGAN.

## FIRST CLAIM
### Deliberate Indifference (Pre-Attack)
### (U.S. Const. Amend. VIII; 42 U.S.C. § 1983)

64.     Plaintiff THE ESTATE OF JOSEPH REAGAN (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants ROBERT ST. ANDRE, and DOES 1 through 20.

65.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

66.     *Individual Liability:* Plaintiff, the Estate of JOSEPH REAGAN, by and through its duly authorized successor in interest, brings this claim pursuant to 42 U.S.C. § 1983 for violations of JOSEPH REAGAN's rights under the Eighth Amendment to the United States Constitution.

*Objective Component:* JOSEPH REAGAN face a substantial risk of serious harm while housed at HDSP. He was confined to a wheelchair following injuries sustained in a prior altercation with correctional officers, rendering him physically incapable of self-defense or flight. He was housed in a unit with known violent offenders, including BRYAN COOK, who was serving a life sentence for a second-degree murder. Inmate-manufactured weapons circulated freely within the housing unit due to inadequate search and contraband-control measures. These conditions, individually and collectively, posed an objectively serious risk to REAGAN's safety.

*Subjective Component:* Defendant DOES 1 through 20, acting under color of state law and within the course and scope of their employment with the CDCR, knew of the substantial risk of serious harm facing JOSEPH REAGAN and disregarded that risk. Defendants were aware of REAGAN's wheelchair-bound condition, which was open and obvious to any officer who observed him. Defendants knew or should have known of

1     REAGAN's prior altercation with HDSP staff and his pending government claim against the

2     CDCR. Defendants knew or should have known of BRYAN COOK's documented history

3     of violence. Defendants knew or should have known of the presence of contraband

4     weapons within the housing unit based on prior incidents, institutional alerts, and the results

5     of recent contraband sweeps. Despite this knowledge, Defendants failed to take reasonable

6     measures to abate the risk, including but not limited to: the inadequate classification and

7     housing of REAGAN' the failure to separate him from known violent inmates such as

8     COOK; the failure to conduct adequate searches for contraband; and the failure to provide

9     protective custody or enhanced supervision commensurate with his vulnerability.

10    Defendant's conduct constituted deliberate indifference to REAGAN's safety in violation of

11    the Eighth Amendment.

12        67.    *Supervisory Liability*: Defendant Warden ROBERT ST. ANDRE, acting under

13    color of state law and in his supervisory capacity at HDSP, is liable under 42 U.S.C. §

14    1983 for violations of JOSEPH REAGAN's rights under the Eighth Amendment to the

15    United States Constitution.

16        *Objective Component:* For the reasons set forth above and in paragraphs 56

17    through 60, inmates at HDSP, including JOSEPH REAGAN, faced a substantial risk of

18    serious harm arising from the pervasive presence of contraband weapons, inadequate

19    classification and housing practices, and deficient supervision and monitoring of housing

20    units and common areas.

21        *Subjective Component:* Defendant ST. ANDRE knew of the substantial risk of

22    serious harm to inmates at HDSP and disregarded that risk. His knowledge is established by,

23    among other things: (a) his receipt of incident reports, briefings regarding four inmate

24    homicides at HDSP between May 2024 and April 2025, each involving attacks with inmate-

25    manufactured weapons; (b) his knowledge of the results of the March 2025 contraband

26    sweep, which revealed the widespread presence of weapons and other contraband within

27    CDCR high-security facilities, including HDSP; (c) his awareness of the placement of HDSP

28

1    on modified program status due to contraband and overdose concerns; and (d) his

2    knowledge, as Warden, of deficiencies in staff training, supervision, and accountability

3    related to inmate safety. Despite actual knowledge of these conditions, Defendant ST.

4    ANDRE failed to implement adequate corrective measures, failed to enforce existing

5    policies, and failed to discipline or retrain staff involved in prior critical incidents. His

6    deliberate indifference to the known and substantial risk of harm at HDSP was a moving

7    force behind the violations of JOSEPH REAGAN's constitutional rights.

8        68.    The risk of serious harm to JOSEPH REAGAN was so obvious that

9    Defendants must have known of it. A reasonable correctional officer or supervisor, aware

10   that a wheelchair-bound inmate who had filed a grievance and/or claim against the

11   institution was housed in a general population unit with documented violent offenders and

12   where inmate-manufactured weapons were known to circulate, would inevitably conclude

13   that such an inmate faced a substantial risk of serious harm. To the extent any Defendant

14   claims ignorance of the risk, such ignorance itself constitutes deliberate indifference, as the

15   risk was longstanding, pervasive, and well-documented within the institution.

16       69.    Despite actual knowledge of these dangerous conditions, Defendant ST.

17   ANDRE failed to implement adequate policies for inmate classification and housing

18   separation, failed to enforce contraband detection and eradication protocols, failed to ensure

19   that correctional officers conducted required safety checks and dayroom monitoring, and

20   failed to discipline or retain officers involved in prior critical incidents. His deliberate

21   indifference to the known and obvious risks at HDSP, whether due to the existence of

22   defective policies or the absence of necessary policies, was a moving force behind the

23   constitutional violations that resulted in JOSEPH REAGAN's death.

24       70.    Defendants ST. ANDRE and DOES 1 through 20, acting under color of state

25   law, intentionally and/or with reckless disregard for JOSEPH REAGAN's safety, took and

26   failed to take actions in response to his prior physical altercation with HDSP officers. Their

27   conduct was motivated by hostility toward REAGAN arising from that incident and

28

**COMPLAINT FOR DAMAGES**                                                                 23

1   demonstrated reckless or callous indifference to his constitutional rights. Such actions and

2   omissions were wanton, oppressive, and in conscious disregard of his federally protected

3   rights.

4        71.    As a direct and proximate result of the actions and omissions of Defendants

5   ST. ANDRE and DOES 1 through 20, JOSEPH REAGAN suffered conscious pain and

6   suffering prior to his death. Accordingly, Plaintiff THE ESTATE OF JOSEPH REAGAN is

7   entitled to recover compensatory (survival) and nominal damages against Defendants ST.

8   ANDRE and DOES 1 through 20, and punitive damages against each such Defendant whose

9   conduct was malicious, oppressive, or in reckless disregard of REAGAN's rights.

10       72.    WHEREFORE, Plaintiff THE ESTATE OF JOSEPH REAGAN prays for

11  relief as set forth below.

**SECOND CLAIM**
**Unwarranted Interference with Familial Association**
**(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

15       73.    Plaintiff THE ESTATE OF JOSEPH REAGAN (pursuant to Cal. Code Civ.

16  Proc. § 377.30) asserts this claim against Defendants ROBERT ST. ANDRE and DOES 1

17  through 20.

18       74.    Plaintiff CHELSEA AUGUST, the adult daughter of JOSEPH REAGAN,

19  brings this claim under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment

20  substantive due process right to the companionship, society, and familial relationship of her

21  father.

22       75.    Plaintiff realleges and incorporates by reference all preceding paragraphs as

23  though fully set forth herein.

24       76.    Plaintiff CHELSEA AUGUST and her father JOSEPH REAGAN shared a

25  close, loving, and enduring parent–child relationship characterized by frequent

26  communication, mutual emotional support, and deep familial affection.

27

28

77.    *Supervisory / Individual Liability:* Defendants Warden ROBERT ST. ANDRE and DOES 1 through 20, acting under color of state law and within the scope of their employment at HDSP, deprived Plaintiff of her constitutionally protected familial relationship by engaging in conduct that resulted in the unlawful and preventable death of JOSEPH REAGAN.

78.    Defendants ST. ANDRE and DOES 1 through 20 acted with deliberate indifference to a known and substantial risk of serious harm to JOSEPH REAGAN, or, in the alternative, with a purpose to harm unrelated to any legitimate penological objective. Their actions and omissions, including: 1. the failure to protect REAGAN from foreseeable violence by inmate COOK, 2. the failure to respond to his pleas for help, and 3. retaliatory inaction following his prior altercation with HDSP staff, shock the conscience and constitute an unwarranted interference with Plaintiff's liberty interest in the companionship and society of her father.

79.    Defendants' conduct was wanton, oppressive, and in reckless or callous disregard of the constitutional rights of both JOSEPH REAGAN and CHELSEA AUGUST.

80.    As a direct and proximate result of Defendants' conduct, Plaintiff CHELSEA AUGUST has suffered the permanent loss of companionship, comfort, society, guidance, and emotional support of her father, causing severe emotional distress and other compensable injuries.

81.    Accordingly, Plaintiff CHELSEA AUGUST is entitled to compensatory and nominal damages against Defendants ST. ANDRE and DOES 1 through 20, and punitive damages against those Defendants whose conduct was malicious, oppressive, or in reckless disregard of Plaintiff's constitutional rights.

82.    WHEREFORE, Plaintiff THE ESTATE OF JOSEPH REAGAN prays for relief as set forth below.

/ /

**COMPLAINT FOR DAMAGES**                                                                 25

## THIRD CLAIM
### Failure to Summon Medical Care
### (Cal. Gov. Code § 845.6)

83.    Plaintiff THE ESTATE OF JOSEPH REAGAN (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this claim against Defendants ROBERT ST. ANDRE and DOES 1 through 20, and against Defendant CDCR on a theory of vicarious liability under Gov. Code § 815.2(a).

84.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85.    *Individual Liability:* Defendants DOES 1 through 20, while acting within the course and scope of their employment, knew or had reason to know that JOSEPH REAGAN was in immediate need of medical care following the attack by inmate BRYAN COOK, and failed to take reasonable action to summon such medical care, in violation of Gov. Code § 845.6. Their omissions included, but were not limited to: 1. Failing to promptly notify medical staff, 2. Failing to activate emergency alarms, or 3. Failing to otherwise request emergency medical assistance once they became aware (or reasonably should have become aware) of REAGAN's life-threatening injuries.

86.    *Supervisory / Vicarious Liability:* Defendant Warden ROBERT ST. ANDRE, acting within the course and scope of his employment, failed to ensure that correctional staff under his supervision were adequately trained and monitored to promptly summon emergency medical care for injured or disabled inmates, including JOSEPH REAGAN. His acts and omissions contributed to the failure of subordinate officers to take timely and reasonable action to summon care.

87.    Pursuant to Gov. Code § 815.2(a), Defendant CDCR is vicariously liable for negligent the wrongful acts and omissions of their employees and agents, including Warden ST. ANDRE and DOES 1 through 20, who acted within the scope of their employment when they failed to summon medical care as required by Gov. Code § 845.6.

88.    As a direct and proximate result of the foregoing acts and omissions, JOSEPH REAGAN suffered severe physical pain and injury and ultimately died. Plaintiff THE

ESTATE OF JOSEPH REAGAN is therefore entitled to recover compensatory (survival) damages against Defendants CDCR, Warden ST. ANDRE, and DOES 1 through 20, and punitive damages against the individual defendants whose conduct was malicious, oppressive, or in reckless disregard of REAGAN's safety and medical needs.

89.    WHEREFORE, Plaintiff THE ESTATE OF JOSEPH REAGAN prays for relief as set forth below.

**FOURTH CLAIM**
**Tom Bane Civil Rights Act**
**(Cal. Civ. Code § 52.1)**

90.    Plaintiff ESTATE OF JOSEPH REAGAN (pursuant to Cal. Code Civ. Proc. § 377.30) and Plaintiff CHELSEA AUGUST, his daughter, assert this claim against Defendants ROBERT ST. ANDRE and DOES 1 through 20.

91.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

92.    Defendants ST. ANDRE and DOES 1 through 20, while acting under color of law and within the scope of their employment, interfered, and attempted to interfere, by threats, intimidation, and coercion, with JOSEPH REAGAN's rights to be free from cruel and unusual punishment and to receive adequate protection and medical care while in state custody, as secured by the Eighth Amendment to the U.S. Constitution and Article I, section 7(a) of the California Constitution.

93.    These Defendants intentionally engaged in threats, intimidation, and coercion against JOSEPH REAGAN, using their custodial authority and exclusive control over the housing unity to deny him the protection to which he was constitutionally entitled. Their coercive conduct included but was not limited to:

a.    *Physical manipulation of the control booth:* Defendants affirmatively closed the control booth windows – the primary means by which officers hear and observe inmates in the housing unit – thereby physical severing their connection to the dayroom and ensuring that REAGAN's screams for help would not prompt intervention. This was a deliberate, physical act, undertaken to facilitate the denial of protection.

---

**COMPLAINT FOR DAMAGES**                                                              27

b.   *Deliberate refusal to intervene:* Upon becoming aware of the attack on REAGAN, whether through auditory cues, surveillance feeds, or inmate reports, Defendants made the conscious decision to not enter the dayroom, not to deploy authorized force, and not to stop the assault. Their refusal to act was not negligent hesitation; it was purposeful abstention, undertaken with knowledge that REAGAN – wheelchair-bound, bleeding, and entirely dependent on Defendants for his survival – had no alternative means of protection.

c.   *Deliberate withholding of emergency response:* Defendants refused to activate personal body alarms, institutional emergency systems, or radio communications that would have summoned additional officers and medical personnel. These systems existed for the sole purpose of responding to emergencies like the one that killed REAGAN. By deliberately refusing to activate them, Defendants used their exclusive control over emergency response infrastructure to ensure that no help would arrive.

d.   *Deliberate delay of medical care:* After the attack concluded, Defendants continued to withhold access to emergency medical care, delaying the summons of medical personnel while REAGAN bled from multiple stab wounds. REAGAN could not summon help himself. Defendants possessed he excusive ability to do so and deliberately chose not to act promptly, using their control over medical access as a final act of coercion.

e.   *Retaliatory motive:* The foregoing acts of coercion were undertaken in retaliation for JOSEPH REAGAN's prior physical altercation with HDSP correctional officers and his grievance and/or government claim against the CDCR. Defendants' conduct communicated an unmistakable message of intimidation: inmates who challenge HDSP staff or assert grievances and/or claims against the institution will be denied the protection of the state and left to suffer the consequences.

94.   The conduct of Defendants DOES 1 through 20 constitutes "threats, intimidation, or coercion" with the meaning of California Civil Code § 52.1. In the custodial context, coercion includes the deliberate exercise of state authority to deprive an inmate of constitutional protections. JOSEPH REAGAN was wholly dependent on Defendants for

his safety; he could not leave the housing unit, could not access security or medical systems, and could not protect himself. Defendants exploited this captive dependency by deliberately withholding the protection and emergency response that only they could provide. Their affirmative acts – closing the windows, refusing to intervene, declining to summon help, delaying medical response – were not passive omissions but intentional exercises of coercive authority designed to ensure that REAGAN's constitutional rights would be violated without interference. This conduct goes beyond the underlying constitutional violation itself and constitutes independent acts of coercion sufficient to support liability under the Bane Act.

95.    Defendant Warden ST. ANDRE knew of, condoned, or was deliberately indifferent to these coercive and retaliatory acts and failed to train or supervise subordinates to prevent such constitutional violations.

96.    As a direct and proximate result of Defendants' threats, intimidation, and coercion, JOSEPH REAGAN suffered extreme pain, fear, and death.

97.    As a further direct and foreseeable consequence of Defendants' threats, intimidation, and coercion directed at JOSEPH REAGAN, Plaintiff CHELSEA AUGUST also suffered the loss of her constitutionally protected familial relationship with her father. The same coercive conduct that violated JOSEPH REAGAN's rights under Article I, section 7(a) of the California Constitution and the Eighth Amendment also unlawfully interfered with Plaintiff AUGUST's liberty interest in the companionship and society of her father.

98.    Pursuant to Civ. Code § 52(b), Plaintiffs are entitled to compensatory and treble damages, civil penalties, and reasonable attorney's fees, and punitive damages against individual defendants whose conduct was malicious, oppressive, or in reckless disregard of Plaintiffs' rights.

99.    WHEREFORE, Plaintiffs THE ESTATE OF JOSEPH REAGAN and CHELSEA AUGUST pray for relief as set forth below.

**COMPLAINT FOR DAMAGES**                                                                 29

## FIFTH CLAIM
### Intentional Infliction of Emotional Distress
**(Common Law, Cal. Civ. Code § 3294; Cal. Gov. Code §§ 815.2, 820)**

100.    Plaintiff THE ESTATE OF JOSEPH REAGAN (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this claim against Defendants ROBERT ST. ANDRE and DOES 1 through 20.

101.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

102.    *Individual Liability:* Defendants DOES 1 through 20, acting within the course and scope of their employment, engaged in extreme and outrageous conduct intended to cause, or carried out with reckless disregard of the probability of causing, severe emotional distress to JOSEPH REAGAN.

Their conduct included, but was not limited to:

a.    Deliberately ignoring or closing the control-booth windows to avoid hearing REAGAN's screams for help during the prolonged attack by inmate BRYAN COOK;

b.    Failing to intervene or summon immediate medical care despite knowing REAGAN was being stabbed repeatedly and faced imminent death; and

c.    Allowing REAGAN, who was wheelchair-bound and physically defenseless, to be placed in proximity to violent inmates known to pose serious danger.

103.    As a result of these actions and omissions, JOSEPH REAGAN experienced intense fear, anguish, and emotional torment during the assault and while awaiting medical assistance. Defendants' conduct was so extreme and outrageous as to exceed all bounds of decency tolerated in a civilized society.

104.    *Supervisory and Vicarious Liability:* Defendant Warden ROBERT ST. ANDRE, acting within the course and scope of his employment, failed to adequately supervise, train, and discipline subordinate staff, thereby permitting the above-described conduct to occur. Defendant ROBERT ST. ANDRE was aware, or reasonably should have been aware, that

correctional officers under his command routinely disregarded inmate safety and failed to respond to violent incidents or medical emergencies.

105.    Pursuant to Gov. Code § 815.2(a), Defendant CDCR is vicariously liable for the acts and omissions of Warden ST. ANDRE and DOES 1 through 20, who acted within the course and scope of their employment.

106.    The acts and omissions of Defendants ST. ANDRE and DOES 1 through 20 were undertaken with malice, oppression, and conscious disregard for the rights and safety of JOSEPH REAGAN, entitling Plaintiff to punitive damages against those individual defendants pursuant to Civ. Code § 3294.

107.    As a direct and proximate result of Defendants' conduct, JOSEPH REAGAN suffered severe emotional distress, fear, and suffering prior to his death. Plaintiff THE ESTATE OF JOSEPH W. REAGAN is entitled to recover compensatory (survival) damages against Defendants CDCR, Warden ST. ANDRE, and DOES 1 through 20, and punitive damages against the individual defendants.

108.    WHEREFORE, Plaintiff THE ESTATE OF JOSEPH REAGAN prays for relief as set forth below.

## SIXTH CLAIM
### Negligence

(Cal. Civ. Code § 1714(a); Cal. Gov. Code §§ 815.2, 820, 844.6, 845.6)

109.    Plaintiff THE ESTATE OF JOSEPH REAGAN (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this claim against Defendants ROBERT ST. ANDRE and DOES 1 through 20, and against CDCR on a theory of vicarious liability under Gov. Code § 815.2(a).

110.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

111.    *Individual Liability:* Defendants DOES 1 through 20, while acting within the course and scope of their employment with CDCR, owed JOSEPH REAGAN a duty of ordinary and reasonable care to ensure his safety, protection, and provision of medical attention while in state custody. This duty arose from the special relationship between

1    custodial officers and inmates, under which officers must take reasonable steps to protect

2    prisoners from foreseeable harm.

3        112.    Defendants DOES 1 through 20 breached that duty of care by, among other

4    negligent acts and omissions:

5        a.    Improperly classifying and housing JOSEPH REAGAN in proximity to

6    violent inmates, including BRYAN COOK;

7        b.    Failing to maintain adequate supervision and security checks in the housing

8    unit and dayroom;

9        c.    Allowing the circulation and possession of inmate-manufactured weapons;

10   and

11       d.    Failing to promptly summon or provide emergency medical assistance

12   once REAGAN was attacked and visibly in distress.

13       113.    As a direct and proximate result of these negligent acts and

14   omissions, JOSEPH REAGAN suffered severe physical and emotional injuries and

15   ultimately died.

16       114.    *Supervisory Negligence:* Defendant Warden ROBERT ST. ANDRE, while acting

17   within the course and scope of his employment, owed JOSEPH REAGAN a duty to

18   exercise reasonable care in the supervision, training, and management of correctional staff to

19   ensure inmate safety and compliance with institutional security and medical-response

20   procedures. Warden ST. ANDRE breached that duty by failing to implement and enforce

21   adequate safety policies, training, and supervision, and by permitting a pattern of neglect and

22   non-response to inmate violence and medical emergencies.

23       115.    *Vicarious Liability:* Pursuant to Gov. Code § 815.2(a), Defendant

24   CDCR is vicariously liable for the negligent acts and omissions of their employees and

25   agents, including Warden ST. ANDRE and DOES 1 through 20, committed within the

26   course and scope of employment.

27

28

**COMPLAINT FOR DAMAGES**                                                          32

116.   As a direct and proximate result of the negligence of Defendants ST. ANDRE and DOES 1 through 20, JOSEPH REAGAN suffered pain, suffering, and emotional distress prior to his death. Plaintiff THE ESTATE OF JOSEPH REAGAN is entitled to recover compensatory (survival) damages from Defendants CDCR, ST. ANDRE, and DOES 1 through 20, and punitive damages from the individual defendants whose conduct was malicious, oppressive, or in reckless disregard of decedent's safety.

117.   WHEREFORE, Plaintiff THE ESTATE OF JOSEPH REAGAN prays for relief as set forth below.

### SEVENTH CLAIM
### Wrongful Death

(Cal. Code Civ. Proc. § 377.60; Gov. Code §§ 815.2, 820)

118.   Plaintiff CHELSEA AUGUST, the natural daughter and lawful heir of JOSEPH REAGAN, brings this action under Cal. Code Civ. Proc. § 377.60 against Defendants ROBERT ST. ANDRE and DOES 1 through 20, and against CDCR on a theory of vicarious liability under Gov. Code § 815.2(a).

119.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

120.   Plaintiff CHELSEA AUGUST shared a close and loving relationship with her father, JOSEPH REAGAN, regularly speaking with and visiting him prior to his death. As his surviving child and heir, she has suffered, and continues to suffer, the loss of his love, companionship, comfort, guidance, and support.

121.   *Individual Negligence:* Defendants DOES 1 through 20, while acting within the course and scope of their employment with CDCR, owed JOSEPH REAGAN a duty to exercise reasonable care for his safety, protection, and medical needs. These Defendants breached that duty by, among other acts and omissions:

a.   Improperly classifying and housing REAGAN in proximity to violent inmates, including BRYAN COOK;

b.   Failing to monitor and supervise inmates in the housing unit and dayroom;

1    c.    Allowing the circulation and possession of inmate-manufactured weapons;

2 and

3    d.    Failing to promptly summon or provide medical care once REAGAN was

4 visibly injured and in need of immediate aid.

5    122.    Defendants ROBERT ST. ANDRE and DOES 1 through 20 further

6 breached their duties of care by failing to ensure adequate training, staffing, and emergency-

7 response procedures necessary to protect inmates such as JOSEPH REAGAN from

8 foreseeable harm.

9    123.    Inmate BRYAN COOK, whose violent history was known or should have

10 been known to correctional staff, repeatedly stabbed JOSEPH REAGAN with an inmate-

11 manufactured weapon, inflicting fatal injuries while correctional staff failed to intervene or

12 respond in a timely manner.

13    124.    *Supervisory and Vicarious Liability:* Defendant ROBERT ST. ANDRE, acting

14 within the course and scope of his employment, negligently failed to implement and enforce

15 adequate policies for inmate classification, contraband control, supervision, and emergency

16 medical response, thereby creating an unreasonable risk of serious harm.

17    125.    Pursuant to Gov. Code § 815.2(a), Defendant CDCR is vicariously liable for

18 the negligent acts and omissions of Warden ST. ANDRE and DOES 1 through 20, who

19 acted within the course and scope of their employment.

20    126.    As a direct and proximate result of Defendants' negligence and wrongful

21 acts, JOSEPH REAGAN suffered fatal injuries, causing Plaintiff CHELSEA AUGUST to

22 suffer the loss of her father's love, companionship, comfort, care, assistance, moral support,

23 and guidance.

24    127.    Plaintiff CHELSEA AUGUST is entitled to recover compensatory

25 damages against Defendants CDCR, ROBERT ST. ANDRE, and DOES 1 through 20,

26 and punitive damages against the individual Defendants whose conduct was malicious,

27 oppressive, or in reckless disregard of JOSEPH REAGAN's safety.

28

**COMPLAINT FOR DAMAGES**                                                                 34

128.    WHEREFORE, Plaintiff CHELSEA AUGUST prays for relief as set forth below.

## EIGHTH CLAIM
### Deliberate Indifference (Post-Attack)
### (U.S. Const. Amend. VIII; 42 U.S.C. § 1983)

129.    Plaintiff THE ESTATE OF JOSEPH W. REAGAN (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this claim against Defendants DOES 1 through 20 in their individual capacities, and against Defendant Warden ROBERT ST. ANDRE in his individual supervisory capacity.

130.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

131.    At all relevant times, JOSEPH REAGAN had serious and obvious medical needs during and immediately after the June 10, 2025 assault.

*Objective Component:* REAGAN suffered multiple stab wounds inflicted by an inmate-manufactured weapon, resulting in massive blood loss and life-threatening injuries. His medical need was objectively serious: absent immediate emergency intervention, his injuries were certain to result in death. The severity of his condition was apparent to any observer – REAGAN was visibly bleeding, incapacitated, and in acute distress.

132.    *Subjective Component:* Defendants DOES 1 through 20, acting under color of state law, knew of JOSEPH REAGAN's serious medical needs and were deliberately indifferent to those needs in violation of the Eighth Amendment, as made actionable by 42 U.S.C. § 1983. Defendants were aware, or the circumstances were such that they must have been aware, that REAGAN had been attacked and was suffering from life-threatening injuries. Other inmates in the housing unit called for help, audibly alerting staff to the emergency. The attack was visible on closed-circuit surveillance monitors that Defendants were responsible for observing. Despite awareness of a substantial risk of serious harm and death, Defendants failed to take reasonable measures to summon or provide necessary care, including but not limited to:

a. Failing to promptly active personal or institutional alarms designed to summon emergency response;

b. Failing to immediately notify medical staff of a life-threatening emergency;

c. Failing to timely enter t the dayroom and render first aid, apply pressure to wounds, or use authorized force to stop the attack so that medical aid could be provided; and

d. Delaying the dispatch or arrival of medical personnel by failing to communicate the severity of REAGAN's injuries.

Defendants' failure to respond to REAGAN's obvious and serious medical needs caused him to suffer unnecessary pain and a prolonged period of conscious suffering, and was a substantial factor in his death.

133.    The objective reasonableness of REAGAN's medical needs and Defendant's subjective awareness of those needs are further established by the following circumstances: REAGAN was wheelchair-bound and entirely incapable of seeking help or rendering self-aid; the attack occurred in a dayroom under active (or required) CCTV surveillance; other inmates audibly called for assistance; and the attack was of sufficient duration that any officer conducting required safety checks or monitoring surveillance feeds would have observed it. A reasonable officer in these circumstances would have recognized the acute, life-threatening nature of REAGAN's injuries and acted promptly to summon and facilitate emergency care. Defendants' failure to do so constituted deliberate indifference to his serious medical needs.

134.    *Supervisory Liability:* Defendant Warden ROBERT ST. ANDRE, acting under color of state law in a supervisory capacity, is liable for the post-attack deliberate indifference to JOSEPH REAGAN's serious medical needs.

*Objective Component:* Inmates at HDSP who suffer violent assaults have serious medical needs requiring prompt emergency response.

*Subjective Component:* Defendant ST. ANDRE knew or and acquiesced in the customs and practices of delayed or inadequate medical response to inmate emergencies at HDSP. Upon information and belief, prior critical incidents at HDSP, including the inmate homicides described in paragraph 56, involved delays in summoning medical care and failures to promptly detect and respond to inmate-on-inmate violence. Defendant ST. ANDRE was aware of these deficiencies through incident reports, after-action reviews, and his supervisory responsibilities, yet failed to implement adequate training, supervision, and accountability measures to ensure prompt emergency medical response. His deliberate indifference to the substantial risk that subordinates would fail to summon needed care was a moving force behind the constitutional violation that caused JOSEPH REAGAN's death.

135.   As a direct and proximate result of the foregoing, JOSEPH REAGAN suffered conscious pain and suffering and ultimately died. Plaintiff THE ESTATE OF JOSEPH REAGAN is entitled to compensatory (survival) and nominal damages against DOES 1 through 20 and Warden ST. ANDRE, and to punitive damages against each individual defendant whose conduct was malicious, oppressive, or in reckless disregard of REAGAN's rights.

136.   WHEREFORE, Plaintiff THE ESTATE OF JOSEPH REAGAN prays for relief as set forth below.

### NINTH CLAIM
### Violation of Mandatory Duty
### (Cal. Gov. Code § 815.6)

137.   Plaintiffs THE ESTATE OF JOSEPH REAGAN and CHELSEA AUGUST both assert this claim against Defendant CDCR.

138.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

139.   Government Code § 815.6 imposes liability on a public entity when a mandatory duty created by an enactment (statute or regulation) is designed to protect against the kind of injury suffered, the entity fails to discharge that duty, and the breach proximately causes the injury.

140.    At all relevant times, California regulations and enactments imposed mandatory, non-discretionary duties on CDCR and HDSP designed to protect inmates from violence and to ensure timely detection and response to emergencies, including without limitation, the following Title 15 regulations:

- § 1027 (Number of Personnel) and § 1027.5 (Safety Checks) requiring adequate staffing and periodic safety checks at prescribed intervals;

- § 1050 (Classification Plan) and § 1053 (Administrative Separation) requiring appropriate housing/classification and separation to protect inmates from known risks;

- Related provisions mandating supervision, monitoring, and security procedures to prevent the introduction and circulation of contraband weapons and to protect inmate safety.

These enactments are intended to protect inmates like JOSEPH REAGAN from the precise harms suffered here: inmate-on-inmate violence, delayed detection of an assault, delayed summoning of medical care, and death.

141.    Defendant CDCR failed to discharge these mandatory duties by, inter alia: (a) not performing required safety checks and supervision of the housing unit and dayroom; (b) failing to classify/separate a wheelchair bound, vulnerable inmate from known violent inmates such as BRYAN COOK; (c) failing to implement enforcement measures necessary to detect and prevent contraband weapons; and (d) failing to ensure timely monitoring and response to visible emergencies captured by surveillance and audible within the unit.

142.    Defendant CDCR's breach of these mandatory duties proximately caused REAGAN's injuries and death by allowing a prolonged assault with an inmate-manufactured weapon to occur and by delaying emergency response and medical summons.

143.    Pursuant to Gov. Code § 815.6, Defendant CDCR is directly liable for damages caused by their failure to discharge these mandatory duties. In addition, and to the

extent applicable, CDCR is vicariously liable under Gov. Code § 815.2(a) for the acts and omissions of their employees acting within the course and scope of employment.

144.    As a direct and proximate result of Defendants' violations of mandatory duties, JOSEPH REAGAN suffered severe injuries and death, causing damages as alleged herein. Plaintiff THE ESTATE OF JOSEPH REAGAN (survival) and Plaintiff CHELSEA AUGUST (wrongful death) seek compensatory damages according to proof. No punitive damages are sought against CDCR for this claim.

145.    WHEREFORE, Plaintiffs THE ESTATE OF JOSEPH REAGAN and CHELSEA AUGUST pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs THE ESTATE OF JOSEPH REAGAN, and CHELSEA AUGUST seek Judgment as follows:

1. For an award of compensatory, general, special, and nominal damages, including survival damages and wrongful death damages, against Defendants ROBERT ST. ANDRE and DOES 1 through 20 under federal and state law, and against Defendant CDCR under state law only, according to proof at trial;

2. For an award of exemplary/punitive damages against Defendants ROBERT ST. ANDRE and DOES 1 through 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

3. For funeral and/or burial expenses;

4. For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants CDCR, ROBERT ST. ANDRE and DOES 1 through 20, pursuant to California Civil Code §§ 52, 52.1,

**COMPLAINT FOR DAMAGES**

and any other statute as may be applicable (except that no punitive damages are sought against Defendant CDCR pursuant to California Civil Code § 818);

5. For interest as allowed by law;

6. For an award of attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable; and

7. For an award of any other further relief, as the Court deems fair, just and equitable.

Respectfully Submitted.

Dated: November 25, 2025

**HARRISON | KRISTOPHER, LLP**

By:     Bryan J. Harrison, Esq.

## DEMAND FOR TRIAL BY JURY

Plaintiffs THE ESTATE OF JOSEPH REAGAN, and CHELSEA AUGUST hereby demand a trial by jury.

Dated: November 25, 2025

**HARRISON | KRISTOPHER, LLP**

By:     Bryan J. Harrison, Esq.

**COMPLAINT FOR DAMAGES**

# Exhibit 1

Exhibit 1

1   BRYAN J. HARRISON, ESQ. (SBN 277312)
    *Bryan@h-klaw.com*
2   EDI P. KRISTOPHER, ESQ.  (SBN 284833)
    *Edi@h-klaw.com*
3   **HARRISON | KRISTOPHER, LLP**
    301 E. Colorado Blvd., Ste. 323
4   Pasadena, California 91101
    Telephone: (866) 529-6155
5   Facsimile: (866) 565-6206

6   HOSSEIN KHATAMI, ESQ. (SBN 278350)
    *Hoss@hosslaw.com*
7   **HOSS LAW, P.C.**
    2140 Professional Dr., Ste. 150
8   Roseville, California 95661
    Telephone: (916) 788-4445
9   Facsimile: (916) 788-4447

10

11  Attorneys for Plaintiffs

12                  UNITED STATES DISTRICT COURT

13              EASTERN DISTRICT OF CALIFORNIA

14                      SACRAMENTO DIVISION

15

16  THE ESTATE OF JOSEPH REAGAN, *by*      Case No.:
17  *and through Chelsea August, Successor in Interest to*
    *Decedent Joseph Reagan;* CHELSEA AUGUST,
18  *as an individual,*                    **DECLARATION OF CHELSEA**
                                           **AUGUST, Re: SUCCESSOR IN**
19                                         **INTEREST AND HEIRSHIP (Cal.**
            Plaintiffs,                    **Code Civ. Proc. § 377.32)**
20
21                  vs.

22  CALIFORNIA DEPARTMENT OF
    CORRECTIONS AND
23  REHABILITATION (CDCR), an agency of
    the State of California; ROBERT ST.
24  ANDRE, Warden of High Desert State
    Prison; and DOES 1 to 20, individually,
25  jointly and severally,

26          Defendants.

27

28
    ─────────────────────────────────────────
    **DECLARATION OF CHELSEA AUGUST Re: SUCCESSOR IN INTEREST AND HEIRSHIP**        1

I, CHELSEA AUGUST, declare as follows:

1.    My name is Chelsea August. I am over 18 years of age and competent to make this declaration. I submit this declaration pursuant to California Code of Civil Procedure § 377.32 to establish my standing as the successor in interest and biological heir of Joseph W. Reagan, deceased.

2.    Decedent's Information:

    a.  Name: Joseph W. Reagan

    b.  Death of Death: June 10, 2025

    c.  Place of Death: High Desert State Prison, Susanville, California.

3.    Relationship to Decedent: I am the biological daughter of Joseph W. Reagan. Attached hereto as **Exhibit A** is a true and correct copy of my certified birth certificate, which lists Joseph W. Reagan as my father. I am the sole biological child of the decedent.

4.    Decedent's Marital Status: To the best of my knowledge and belief, the decedent was unmarried at the time of his death.

5.    No Pending Probate Proceding: To the best of my knowledge and belief, after diligent inquiry, no proceeding is now pending in California for the administration of the estate of Joseph W. Reagan, and I am not aware of any such proceeding having been commenced.

6.    Intestate Estate: To the best of my knowledge and belief, the decedent died intestate, having left no valid will or testamentary instrument.

7.    Other Heirs: To the best of my knowledge and belief, after diligent inquiry, I am the sole heir at law of Joseph W. Reagan under California's laws of intestate succession.

8.    Successor-in-Interest Status: I am the successor in interest to Joseph W. Reagan, as that term is defined in Cal. Code Civ. Proc. § 377.11, and I succeed to his interest in any and all causes of action that survived his death.

9.    Purpose of Declaration: This declaration is made so that I may properly prosecute, as decedent's successor in interest, those causes of action that survived his death

1   under Cal. Code Civ. Proc. § 377.30, and to bring, in my individual capacity, claims for

2   wrongful death pursuant to Cal. Code Civ. Proc. § 377.60.

3        10.    Superior Right: No other person has a superior right to commence this action

4   or to act as the successor in interest of the decedent. As the sole biological child and heir of

5   the decedent, I have the sole and exclusive right to prosecute survival actions on behalf of

6   the decedent's estate and to bring wrongful death claims arising from his death.

7        11.    Supporting Documentation: The following documents are attached hereto and

8   incorporated by reference:

9           a.  **Exhibit A**: Copy of my Birth Certificate establishing my biological

10             relationship to decedent.

11       I declare under penalty of perjury under the laws of the State of California that the

12   foregoing is true and correct.

13   Executed on ___11/3_____, 2025, at _____3:56_____ [City, State].

14

15   Signed by:

     _____

     14396EAE56E148D

16   CHELSEA AUGUST

     Declarant

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

